USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/24/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALMIRA KOLENOVIC,

Plaintiff,

-v-

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE,

Defendant.

No. 12 Civ. 6173 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Almira Kolenovic challenges the United States Citizenship and Immigration Service's ("USCIS") denial of her application to adjust her immigration status. Kolenovic arrived in the United States from the former Yugoslavia shortly after her first birthday and has lived here her whole life. She successfully applied for temporary residence and was, by all accounts, on her way to permanent residence under the amnesty provisions of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359. Although Kolenovic's family members applied for and obtained permanent residence, she submitted her application approximately nineteen months late, and it was denied. Kolenovic, who was fourteen years old on the date her application was due, alleges that her application was not filed on time because of ineffective assistance of counsel.

Although the equities make this case a difficult one, Congress's intent is clear: no status-adjustment application that is denied "based on a late filing of an application for such adjustment may be reviewed by a court of the United States." 8 U.S.C. § 1255a(f)(2). Nor may a court hear a challenge to an adjustment-of-status denial unless the applicant is facing an order of

deportation. The Court therefore lacks jurisdiction to hear Kolenovic's claim.

## BACKGROUND

The facts alleged in Kolenovic's Amended Complaint—which the Court assumes to be true for purposes of this motion, see Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)—are straightforward. Kolenovic arrived in the United States on September 1, 1979, and obtained temporary residence under the IRCA on November 8, 1989. (Am. Compl. ¶¶ 4-5.) Her application for permanent residence was due forty-three months later, see 8 U.S.C. § 1255a(b)(1)(A), but she did not submit it until December 5, 1994, (Am. Compl. ¶ 7). The Amended Complaint alleges that "[u]pon information and belief an application to adjust status to permanent residence was not filed for the plaintiff within this limitation period due to ineffective assistance of counsel." (Id. at 6.)

USCIS denied Kolenovic's application for permanent residence on January 30, 1995, and informed her of its intention to terminate her temporary resident status.[1] (See Am. Compl. ¶ 7 & ex. B at 1.) After affording Kolenovic an opportunity to be heard, USCIS terminated her temporary resident status. Id. ¶ 7 & ex. B at 2; see also 8 U.S.C. § 1255a(b)(2)(C) (providing for termination of temporary resident status). In October 1997, Kolenovic submitted a second application to adjust her status to permanent residence. (Id. ¶ 8 & ex. C.) Noting that Kolenovic's temporary residence had already been terminated, USCIS denied the application as moot on December 1, 1998.[2] (Id. ¶ 8 & ex. D.)

Kolenovic filed the instant lawsuit on August 13, 2012. (Dkt. no. 1.) Her Amended

---

1 The agency responsible for processing Kolenovic's applications was the Immigration and Nationality Service ("INS"); USCIS has since assumed the INS's duties as relevant to this case. See Brown v. Ashcroft, 360 F.3d 346, 348 n.1 (2d Cir. 2004).

2 Kolenovic alleges that her counsel did not provide her with a copy of this letter and that, as of the date of the Amended Complaint, Defendant's website showed that her second application was "still pending." (Am. Compl. ¶ 8 & ex. E.)

Complaint alleges that IRCA's forty-three month deadline was subject to tolling and seeks a judgment "[o]rdering defendant to adjudicate her first or second application for adjustment of status as timely filed." (Am. Compl. at 4.)

**DISCUSSION**

USCIS moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or, alternatively, for failure to statue a claim under Fed. R. Civ. P. 12(b)(6). Because the Court concludes that it lacks subject matter jurisdiction, it need not consider USCIS's 12(b)(6) motion.

**1. The Structure of IRCA**

The amnesty program that Title II of IRCA established "was developed as a one-time opportunity to legalize undocumented aliens who, over the years, had shown their capacity to be contributing members of society but who had not obtained legal status during their residency. Perales v. Reno, 48 F.3d 1305, 1307 (2d Cir. 1995). IRCA's amnesty program proceeded in two phases. Individuals lacking immigration status could apply for temporary residence "during a twelve-month period beginning on a date designated by the Attorney General and later established by regulation as May 5, 1987 through May 4, 1988." Id. (alteration omitted); see 8 U.S.C. § 1255a(a)(1). The second stage commenced nineteen months after the applicant's receipt of temporary residence status and "gave aliens one year, later extended to two, in which to apply for permanent resident status." Perales, 48 F.3d at 1307 (citation omitted). To qualify for temporary residence—and ultimately permanent residence—an applicant "must have resided continuously in the United States in an unlawful status since at least January 1, 1982; must have been physically present in the United States continuously since November 6, 1986, the date the [IRCA] was enacted; and must have been otherwise admissible as an immigrant." Reno v.

Catholic Soc. Servs., Inc., 509 U.S. 43, 46 (1993) (citations omitted).

In addition to prescribing the qualifications for those who can take advantage of its legalization program, IRCA also "provides an exclusive scheme for administrative and judicial review of determinations respecting applications for adjustment of status." Id. at 53 (alterations omitted). Three provisions are relevant here.

First, after describing the legalization program, IRCA provides: "No denial of adjustment of status under this section based on a late filing of an application for such adjustment may be reviewed by a court of the United States or of any State or reviewed in any administrative proceeding of the United States Government." 8 U.S.C. § 1255a(f)(2). Second, the law further restricts jurisdiction over denials of adjustment-of-status applications by permitting "judicial review of such a denial only in the judicial review of an order of deportation." Id. § 1255a(f)(4)(A). Under this provision, the Supreme Court has explained, "the alien must first either surrender to the INS for deportation or wait for the INS to catch him and commence a deportation proceeding, and then suffer a final adverse decision in that proceeding, before having an opportunity to challenge the INS's denial of his application in court." Reno, 509 U.S. at 55 (footnote omitted). Third, Congress closed the circle of judicial review by rendering IRCA's scheme exclusive: "There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. § 1255a(f)(1).

**2. Application to the Instant Action**

The Court need not look beyond the clear text of the statute to conclude that it lacks jurisdiction. Kolenovic's first application was denied because it "was not filed within 43 months after the approval of [her] application for temporary resident status." (Am. Compl. Ex. B.) Her

second application was denied as moot because her temporary residence had already been terminated due to her failure to file a timely application for permanent residence. (Am. Compl. Ex. D.) Both applications were thus denied "based on a late filing of an application" for adjustment. 8 U.S.C. § 1255a(f)(2).

Even if the provision limiting review of untimely applications did not apply, the Court would lack jurisdiction for another reason. Kolenovic is not subject to an order of deportation, and she has understandably declined the government's invitation to initiate deportation proceedings voluntarily.[3] Cf. Orquera v. Ashcroft, 357 F.3d 413, 416 (4th Cir. 2003) (upholding jurisdiction under § 1255a where petitioners voluntarily entered removal proceedings). Jurisdiction is lacking because Kolenovic has not presented her claim in the context of an order of deportation. See 8 U.S.C. § 1255a(f)(4)(A); Reno, 509 U.S. at 55; Haider v. United States, No. 09-CV-946(JG), 2009 WL 5042532, at *3 (E.D.N.Y. Dec. 16, 2009) ("Based on the unambiguous text of the statute, I am without subject matter jurisdiction to review the AAO's denial of Haider's petition without an order of deportation.").

Kolenovic makes three arguments to escape IRCA's jurisdictional limitations. None is persuasive.

First, Kolenovic attempts to style her claim as a petition for mandamus. (Am. Compl. ¶ 1; Pl.'s Opp. at 4-5.) To be entitled to this "extraordinary remedy," USCIS must owe Kolenovic "a clear nondiscretionary duty," and she must show "a clear and indisputable right" to the writ's issuance. Escaler v. U.S. Citizenship and Immigration Servs., 582 F.3d 288, 292 (2d Cir. 2009). Asserting that the forty-three-month deadline should not have begun until after she

---

[3] Although the government notes that "Kolenovic does not fall within agency priorities for the commencement of removal proceedings," it also represents that it "has raised with Kolenovic the possibility of placing her in removal proceedings in order to provide her with a path to judicial review of her claims. Kolenovic has declined to proceed in this manner." (Def.'s Mem. of Law at 4 n.2.)

turned eighteen, Kolenovic argues that she "does not seek review of an application denied for late filing but rather the adjudication of an application timely filed after she turned 18." (Pl.'s Opp. at 5.)

The Second Circuit considered—and rejected—a similar attempt to manufacture mandamus jurisdiction in Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011). In that case, plaintiff, who had been removed from the country, reentered without inspection and applied for admission. Id. at 53-54. USCIS denied her application and immigration authorities reinstated her removal order, which the Second Circuit affirmed in a separate proceeding. Id. at 54. Plaintiff then brought a mandamus action in district court, asserting that USCIS had improperly denied her application. Id. The Second Circuit held that her mandamus petition was simply an "indirect challenge" to her removal order. Id. at 53. Under a separate provision of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(5), the only means for judicial review of a removal order is a petition filed with the appropriate court of appeals—a procedure plaintiff had already exhausted. Id. at 54. The Second Circuit therefore concluded that plaintiff could not "evade the restrictions of section 1252(a)(5) by styling her challenge as a mandamus action in order to claim jurisdiction under 28 U.S.C. § 1361." Id. at 56.

Here, Kolenovic similarly attempts to "evade the restrictions" of § 1255a(f)—which precludes review of untimely-filed adjustment-of-status applications and those filed outside the context of a deportation order—by "styling her challenge as a mandamus action in order to claim jurisdiction under 28 U.S.C. § 1361." Id. at 56. Were the Court to accept her argument—that she "does not seek review of an application denied for late filing but rather the adjudication of an application timely filed after she turned 18"—§ 1255a(f)'s jurisdictional bar would be rendered meaningless. Any plaintiff seeking review of an application denied as untimely could restyle her

claim as a mandamus action seeking to force "adjudication of an application timely filed" or could assert her mandamus petition outside the context of a deportation order. Consistent with other district courts that have considered such arguments, the Court concludes that it lacks jurisdiction over Kolenovic's claim to mandamus. See Dorani v. Gantner, No. 08-CV-3831(FB), 2010 WL 5014308, at *1 (E.D.N.Y. Dec. 1, 2010); Barbour v. Holder, No. 09-3062(KSH), 2010 WL 2629070, at *7 (D.N.J. June 28, 2010); Hussain v. United States, No. 09-CV-895(CPS), 2009 WL 2413260, at *4 (E.D.N.Y. Aug. 3, 2009).

Kolenovic also asserts that the Court has jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*[4] Although the APA provides that a "person suffering legal wrong because of agency action" is "entitled to judicial review thereof," id. § 702, the Act further provides that its review provisions do not apply "to the extent that statutes preclude judicial review." Id. §§ 701(a)(1), 702. Plaintiff in Delgado similarly attempted to argue that the APA permitted review of her "indirect" challenge to her deportation order, but the Second Circuit held that the APA did not overcome the clear jurisdictional limitation in the statute at issue there. See 643 F.3d at 55 ("The APA explicitly does not apply to the extent that statutes preclude judicial review." (alteration omitted)). Other courts have also held that the APA does not provide a means of overcoming § 1255a(f)'s jurisdictional limits. See Qureshi v. Administrative Appeals Office (AAO) of U.S. Citizenship and Immigration Services (USCIS), 408 F. App'x 611, 614-15 (3d Cir. 2010); Barbour, 2010 WL 2629070, at *7. This Court shares that view and concludes that it lacks jurisdiction over Kolenovic's APA claim.[5]

---

[4] Technically speaking, the APA is not an independent source of jurisdiction. See Califano v. Sanders, 430 U.S. 99, 106 (1977). Rather, when a plaintiff properly brings an APA claim, a court's jurisdiction is based on 28 U.S.C. § 1331, the federal question statute. Id. For simplicity, the Court refers to Kolenovic's argument as asserting jurisdiction under the APA.

[5] Insofar as Kolenovic attempts to assert separate federal question jurisdiction—that is, independent of the APA—that argument fails. The federal question statute is "subject" to "preclusion-of-review" statutes. Califano,

Finally, Kolenovic argues that a conclusion by the Court that it lacks jurisdiction would run "contrary to the strong presumption in favor of judicial review." (Pl.'s Opp. at 5.) Kolenovic is correct that the Supreme Court has recognized a "strong presumption that Congress intends judicial review of administrative action." Bowen v. Michigan Acad. of Family Physicians, 476 U.S. 667, 670 (1986). This presumption, however, is just that: a presumption. "[L]ike all presumptions used in interpreting statutes," it "may be overcome by, *inter alia*, specific language or specific legislative history that is a reliable indicator of congressional intent." Id. at 673.

Here, the statute specifically provides that "[n]o denial of adjustment of status under this section based on a late filing of an application for such adjustment may be reviewed by a court of the United States." 8 U.S.C. § 1255a(f)(2). As the D.C. Circuit explained: "It is difficult to see how Congress could have made any clearer its intention to prevent judicial intervention into the INS' enforcement of the application deadline." Ayuda, Inc. v. Thornburgh, 948 F.2d 742, 758 (D.C. Cir. 1991), vacated on other grounds by Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 55-56 (1993).[6] In any event, Kolenovic has failed to point to anything in the statute's legislative history contravening the result that the clear text of the statute seems to require: that courts lack jurisdiction over cases like this one.

## CONCLUSION

Although the Court is not without sympathy for Kolenovic, the unambiguous text of 8

---

430 U.S. at 106. Here, § 1255a(f) is clearly such a statute that precludes review. Cf. Chen Chaun-Fa v. Kiley, 459 F. Supp. 762, 765 (concluding that federal question jurisdiction was lacking based on provision in Immigration and Nationality Act that limited the scope of judicial review).

6 The Supreme Court in Reno concluded that because "the language setting the limits of the jurisdictional bar" in § 1255a(f) "describes the denial of an individual application," the jurisdictional bar did not preclude plaintiffs in two class actions from arguing that the INS lacked the authority to promulgate certain regulations under the IRCA (as the D.C. Circuit held in Ayuda). 509 U.S. at 56. The holding in Reno simply underscores the Court's conclusion here: § 1255a(f) precludes a district court from hearing a challenge to the rejection of an "individual application" unless made in the context of a deportation order.

U.S.C. §§ 1255a(f)(2) and (f)(4)(A) preclude it from exercising jurisdiction over her claim. Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) is therefore GRANTED.

The Clerk of Court is respectfully requested to terminate the motion pending at docket number 11 and to close the case.

SO ORDERED.

Dated: March 24, 2014
New York, New York

Ronnie Abrams
United States District Judge